UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HEBDA, et al.,

                    Plaintiffs,                              No. 13-cv-11038

vs.                                                          Hon. Gerald E. Rosen

HARBINGER GROUP, INC. and
FIDELITY AND GUARANTY LIFE,
INC.,

                    Defendants.
_____/

OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS

## I.  INTRODUCTION

        The above-captioned matter is presently before the Court on the Motions to

Dismiss separately filed by Defendants Fidelity & Guaranty Life Insurance Company

("F&G")[1] and Harbinger Group, Inc. ("Harbinger"). Plaintiffs have responded and

Defendants have replied.  Having reviewed and considered Defendants' Motions, the

parties' briefs, and the entire record of this matter, the Court has determined that oral

argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local

Rule 7.1(f)(2), this matter will be decided "on the briefs."

_____

        [1]  F&G is erroneously identified in Plaintiffs' Complaint as "Fidelity and
Guarantee Life, Inc."

1

<u>PERTINENT FACTS</u>

On March 8, 2013, Robert Hebda and 21 other individual plaintiffs, through counsel, filed a one-count complaint for fraud against Defendants F&G and F&G's parent company, Harbinger Group.  Plaintiffs allege that they are all individuals who through Retirement Strategies, Inc. ("RSI"), a financial services firm, and RSI employee, Andrew Briggs, purchased annuities that were underwritten by F&G.  *See* Complaint ¶¶ 4, 10.  Plaintiffs allege that RSI and/or Briggs engaged in an "annuity flipping" scheme whereby RSI and/or Briggs would "take an annuity before it matured and surrender the annuity at cost to the client and place the surrender proceeds in the client's checking account."  *Id.* at ¶ 9.  RSI and/or Briggs allegedly would then purchase another annuity with the plaintiff-client's funds from F&G, and obtain a commission from F&G for the purchase.  *Id.* at ¶ 10.  Plaintiffs also allege that RSI and/or Briggs had other RSI employees remove from information packets provided to clients certain mandatory disclosure pages which stated the surrender charge percentage and possible tax consequences of surrender and which would have alerted the clients to the problems with annuity sale and repurchase transactions.  *Id.* at ¶ 14.[2]

_____

[2]   The Court notes that this is not the first complaint filed on behalf of clients of RSI predicated upon the actions complained of in this action.  In fact, all but three of the Plaintiffs in this action were among the 20 named plaintiffs in *Dillingham-Rivera, et al. v. Retirement Strategies, Inc., et al.,* E.D. Mich. No. 12-15288, a case assigned to the Hon. Robert H. Cleland.  The *Dillingham-Rivera* complaint was filed by the same attorney representing the Plaintiffs in the instant action, Richard A. Meier.  Judge Cleland dismissed the case on December 13, 2012 for lack of subject matter jurisdiction.  As this case involves the same or related parties, and arises out of the same transactions that were

Plaintiffs further allege that F&G wrongfully accepted incomplete paperwork from RSI and processed the annuity switch. *Id.* Plaintiffs also allege that F&G should have known that RSI was processing "far in excess of the national average of clients surrendering their annuities and having the annuity rewritten, yet continued to process Retirement Strategies, Inc. switches without investigating the process." *Id.* at 16. Plaintiffs claim that they have been damaged by the scheme because they lost part of their investments through diminished surrender value and are liable for taxes based on the placement of money into their checking accounts. *Id.* at ¶¶ 11, 12.

## III. DISCUSSION

### A. APPLICABLE STANDARDS

Fed. R. Civ. P. 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted. . . ."  In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the

---

the subject of the case before Judge Cleland, pursuant to Eastern District of Michigan Local Rule 83.11(b)(7), counsel was required to have noted that this case was a possible "companion case" to Judge Cleland's case when he filed it, but he did not do so. (The Court further notes that Mr. Meier filed yet a third complaint arising out of the actions of RSI and Andrew and Scott Briggs, *Allor v. ECA Marketing, Inc., et al.,* No. 13-11142, but did not identify either this case or Judge Cleland's earlier case as a possible companion case.)  Counsel is advised to familiarize himself with L.R. 83.11(b)(7) and to read the case of *In re Fieger*, 191 F.3d 451 (6th Cir. 1999), regarding the imposition of sanctions for violation of the Local Rule.

plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949. The plausibility standard, however, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant' liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Applying the foregoing standards, the Court concludes that Defendants' Motions to Dismiss in this case should be granted.

4

B.    PLAINTIFFS HAVE FAILED TO MEET THE HEIGHTENED PLEADING
       REQUIREMENTS OF FED. R. CIV. P. 9(b)

As indicated, Plaintiffs' Complaint alleges a single cause of action for fraud.  In order to state a claim for fraud, Plaintiffs must meet the heightened pleading requirement of Fed. R. Civ. P. 9(b).  Rule 9(b) requires that the circumstances constituting fraud be pled with particularity.  Furthermore, compliance with Rule 9(b) is to be reviewed "as to each of the elements of the claim of fraud. . . and as to each of the named defendants. . ." *Picard  Chem., Inc. Profit Sharing Plan v. Perrigo Co.* 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).  Under Michigan law, to properly allege a claim of fraud, the plaintiff must show (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth or falsity, and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damage.  *Campbell v. Sullins*, 257 Mich. App. 179, 195, 667 N.W.2d 887 (2003).

Plaintiffs' Complaint is fundamentally flawed in that there are no allegations whatsoever as to any misrepresentation made by either of the named defendants, no allegation that either Defendant had any intent to deceive, and no allegation that any of the Plaintiffs relied on any representation made by either F&G or Harbinger.  The only allegations concerning F&G is that (1) F&G underwrote the annuities Plaintiffs

5

purchased through RSI; (2) F&G accepted the paperwork for the purchases; and (3) F&G should have known that RSI was processing more than the national average of annuity surrenders.  None of these allegations establishes cognizable fraud under Michigan law. Furthermore, there are no allegations whatsoever concerning Defendant Harbinger Group other than the jurisdictional allegation that "Harbinger Group, Inc. is a Delaware corporation," Complaint ¶ 1, and one general identifying allegation that "Harbinger Group, Inc. is a holding company that wholly owns F and G."  *Id.* at ¶ 4.

Plaintiffs do not dispute the deficiencies in their Complaint pointed out by Defendants and have not raised any argument as to why their Complaint should not be dismissed due to these deficiencies.  Rather, they merely assert that they should be granted leave to amend and have appended to their response a proposed Amended Complaint.  In this proposed Amended Complaint, instead of alleging a single claim of fraud, Plaintiffs allege three separate claims:  In Count I, Plaintiffs allege a claim of "churning."  In Count II, Plaintiffs allege a claim of "Failure to Disclose" based on the removal of mandatory disclosure pages from client packets by RSI employees.  In Count III, Plaintiffs allege a claim of "Failure to Supervise."

## C.    PLAINTIFFS' PROPOSED AMENDMENTS TO THEIR COMPLAINT WOULD BE FUTILE

Federal Rule of Civil Procedure 15(a) provides that parties may amend their pleading by leave of court and leave shall be freely given when justice so requires. The grant or denial of leave to amend is a matter left to the discretion of the trial court.

*Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). It is not an abuse of discretion, however, for the court to deny leave to amend when the amendment would be futile and/or could not withstand a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420-21 (6th Cir. 2000); *Hutsell v. Sayre*, 5 F. 3d 996, 1006 (6th Cir. 1993) (holding that the district court properly denied futile amendment); *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 225 (8th Cir. 1994) ("It is settled that 'if the proposed change.. . . advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 528 (9th Cir. 1989) ("Leave to amend need not be given if the complaint, as amended, is subject to dismissal."); *Phillippine American Life Ins. v. Raytheon Aircraft Co.*, 252 F. Supp. 2d 1138, 1146 (D. Kan. 2003) ("A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim.")

Under the foregoing standards, Plaintiffs' proposed amendment of their complaint to break their claim of fraud into three separate claims of churning, failure to disclose and failure to supervise would be futile as none of the proposed amended claims would withstand a motion to dismiss.

1.    Plaintiffs Assert No Claims Against Defendant Harbinger

As an initial matter, the Court notes that as with their original Complaint, in their proposed Amended Complaint, Plaintiffs allege no claims against Defendant Harbinger Group. The only mention of Harbinger is in the jurisdictional allegation in Paragraph 1

7

that "Harbinger is a Delaware corporation." Amended Complaint, ¶1. This allegation is patently insufficient to state any cause of action against Defendant Harbinger. Therefore, Plaintiffs' complaint against this defendant will be dismissed.

2.  Churning

Turning then to Plaintiffs' claims against Defendant F&G, the Court finds that Defendant F&G is not a proper defendant with respect to a cause of action for churning. F&G is the company that issued the annuity, *not* the broker who transferred the annuity, and it is the transfer of the annuities which Plaintiffs claim caused them to suffer damages. As the Sixth Circuit explained in *Craighead v. E.F. Hutton & Co., Inc.* 899 F.2d 485 (6th Cir. 1990), "'Churning' is a shorthand expression for a type of fraudulent conduct in a broker-customer relationship where the broker 'overtrades' a relying customer's account to generate inflated sales commissions." *Id.* at 489; *see also Leib v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952 (E.D. Mich. 1978) ("Churning occurs when a *broker*, exercising control over the volume and frequency of trading, abuses his customer's confidence for personal gain by initiating transactions that are excessive in view of the character of the account." *Id.* (emphasis added)). As F&G was not Plaintiffs' broker, no claim for churning will lie against it.

But even if F&G were a proper party to a claim for churning, as the Sixth Circuit made clear in *Craighead*,

> Churning consists of three elements, **all** of which must be present:  (1) the trading must be excessive in light of the customer's investment objectives;

8

(2) the broker must exercise control over the account; (3) the broker must act with intent to defraud or with willful and reckless disregard for the customer's interests.

899 F.2d at 489 (quoting *M&B Contracting Corp. v. Dale* 795 F.2d 531, 533 (6th Cir. 1986) (emphasis added).

Further, because an allegation of churning is an allegation of fraud, each of the elements must be pleaded with particularity; generalized and conclusory allegations that the defendants' conduct was fraudulent do not satisfy Rule 9(b)'s particularity requirements for a churning claim. *Craighead*, *supra*.

To satisfy the requirements of Rule 9(b) in a claim for churning, the complaint "should contain a statement of facts which is sufficient to, at the very least, permit a rough ascertainment of either the turnover ratio or the percentage of the account value paid in commissions." *Craighead*, 899 F.2d at 490 (citations omitted). With regard to turnover ratio, "Excessive trading generally is thought to exist. . . when there is an annual turnover rate in an account in excess of six." *Id.* (citations omitted).

In this case, for each of the Plaintiffs described in Paragraphs 3 through 20 of the proposed Amended Complaint, Plaintiffs allege only a *single* transfer of an annuity from one company to F&G. A single transfer does not meet the standard of "exessive" trading necessary of a churning claim to lie. Nor does Plaintiffs' Amended Complaint provide any sufficient factual basis from which to ascertain the percentage of the account value paid in commissions.

9

Furthermore, Plaintiffs do not allege that F&G had any control over the accounts listed in the proposed Amended Complaint.  "Where a customer has the independent capacity to accept or reject his broker's recommendations, he cannot accuse his broker of having control over his account even if he habitually follows his broker's recommendations."  *Moran v. Kidder Peabody & Co.* 609 F. Supp. 661, 666 (S.D.N.Y. 1985).  At best, this is what the Amended Complaint alleges.  Plaintiffs here simply cannot show that F&G, the entity that issued the annuity, had any discretionary control over Plaintiffs' accounts, such that a trade could occur without each Plaintiff's approval.

For all of these reasons, the Court concludes that an amendment would be futile with respect to Plaintiffs' proposed churning claim.

3.    Failure to Supervise

Although a brokerage firm may have the duty to supervise its employees, *see Am. Bankers Ass'n v SEC*, 804 F.2d 739 (D.C. Cir. 1986), there is no legal support for a claim that an annuity underwriter has a duty to supervise the actions of independent agents such as Andrew Briggs or his employer RSI.  Indeed, under Michigan law, RSI and Briggs were the agents of the plaintiff-policyholders, not F&G.  *See West Am. Ins. Co. v. Gutekunst*, 230 Mich. App. 305, 310, 583 N.W.2d 548 (1998).  Based on RSI and Briggs's independent agent status, F&G cannot be held responsible for their actions and had no duty to supervise them.  *Potter v. McLeary* 484 Mich. 397, 431, 774 N.W.2d 1 (2009).  Therefore, Plaintiffs' amendment to add a cause of action against F&G for

failure to supervise would be futile.

4.      Failure to Disclose

        Finally, amendment of the complaint to add a cause of action for failure to

disclose would also be futile.  In support of allowing amendment of their complaint to

assert such a cause of action against F&G, Plaintiffs rely on the court's holding in *Leib,*

*supra*, which, as indicated, dealt with *brokers*, not annuity underwriters.  There is no

legal support for holding that the entity issuing the annuity is a fiduciary.  Moreover, as

*Leib* emphasized, the fiduciary duty owed by a broker to an annuity holder arises only

with respect to discretionary accounts.  Non-discretionary accounts, i.e., those "in which

the customer rather than the broker determines which purchases and sales to make," 461

F. Supp. at 952, are what Plaintiffs here had -- Plaintiffs themselves had the final say and

were themselves responsible for determining whether or not their annuities would be

transferred.

        For all of the foregoing reasons, the Court finds that Plaintiffs' proposed

amendment to their complaint would be futile.  Therefore, Plaintiffs' request in response

to Defendants' motions to dismiss for leave to amend will be denied.

                                    CONCLUSION

        For all of the foregoing reasons,

        IT IS HEREBY ORDERED that Defendants' Motions to Dismiss **[Dkt. Nos. 10**

**and 11]** are GRANTED.  Accordingly,

                                        11

IT IS FURTHER ORDERED that Plaintiffs' Complaint be DISMISSED, in its

entirety, with prejudice.

Let Judgment be entered accordingly.


S/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  January 22, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on January 22, 2014, by electronic and/or ordinary mail.

S/Julie Owens
Case Manager, (313) 234-5135

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HEBDA, et al.,

                Plaintiffs,                        No. 13-cv-11038

vs.                                          Hon. Gerald E. Rosen

HARBINGER GROUP, INC. and
FIDELITY AND GUARANTY LIFE,
INC.,

                Defendants.
_____/

## JUDGMENT

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on _____

        PRESENT:   Honorable Gerald E. Rosen
                         United States District Chief Judge

      The Court having this date entered an Opinion and Order granting Defendants'

separately-filed Motions to Dismiss, and being otherwise fully advised in the premises,

      NOW, THEREFORE,

      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT

OF DISMISSAL, WITH PREJUDICE, be, and hereby is, entered.

                                      _____
                                      Gerald E. Rosen
                                      Chief Judge, United States District Court

Dated: _____